Del.]            MÂRTIN  vs. B. & P. R. R. Co.            123

Syllabus.

## WILLIAM C. MARTIN *vs.* THE BALTIMORE & PHILADELPHIA RAILROAD COMPANY.

New Castle County, November Term, 1895.

**Negligence. Railroads.**—In an action to recover damages for injury to person or property, suffered, in crossing a railroad, the plaintiff must show that the negligence of the defendant was the cause of the injury, and that he did not contribute thereto.

**Same.**—The plaintiff having been killed and unable to speak for himself is clothed by the law with a presumption that he did his duty.

**Same.**—The duty of diligence at grade crossings is imposed both on the company and the traveller on the highway.

**Same.**—The railroad company in under no original duty to maintain a flagman at a particular crossing, but if it has done so for some years, the traveller has a right, in his absence, to assume that the road is clear and the way safe.

**Same.**—The absence or negligence of the flagman will not excuse the traveller from using every reasonable precaution.

**Evidence.**—In an action against a railroad company for damages resulting from a collision at a grade crossing, a witness may be asked whether in his judgment it was an unusually dangerous crossing.

**Same.**—Where the condition of the crossing has not been materially changed, since the accident, the present range of vision may be proved.

**Same.**—Examinations to ascertain how far a train may be seen are not admissible when there has been a material change effecting the range of vision.

**Same. Witness. Practice.**—Six witnesses only may be called to testify to a single fact, and any who do so when called for other purposes will be counted.

This was an action on the case brought by William C. Martin, the plaintiff, against the Baltimore & Philadelphia Railroad Company, the defendant, to recover the sum of $192.00, the undisputed

amount of damage to the horse, harness and carriage of the plaintiff, in a collision which occurred at or near the City of Wilmington, where the Concord Turnpike road crosses said railroad.    The admitted facts were as follows:

On Sunday, the sixteenth day of April, 1893, Edward M. Little hired of the plaintiff, and used the horse, harness and carriage in question, to go out into Brandywine Hundred on a visit, taking with him his niece, Ida V. Carpenter.    On the return to Wilmington as they were crossing the track of the railroad at Concord Station, about a quarter of ten in the night time, the carriage was struck by the engine of a south-bound "Royal Blue" train, with such force, that both Little and Miss Carpenter were thrown from the carriage and so injured that they soon died, the carriage demolished, harness broken up and the horse injured.    The railroad approached the crossing on a curve and through a cut which is about eleven feet deep at the deepest point, some six hundred feet north of the crossing.    The railroad crosses the pike at the foot of a hill over twelve hundred feet long.    At the time of the collision there was a growth of bushes, hedge and trees on the east side of the turnpike.    The Railroad Company had that night on duty, and for several years had kept, a watchman and flagman at this crossing, to give warning to travellers, using the pike, of the approach of trains.    Immediately ahead of this carriage was a double carriage drawn by two horses, driven by George T. Garrett, which escaped injury.    The place where the accident happened was within the limits of Wilmington.

The plaintiff produced evidence tending to show that the damage resulted from the negligence of the defendant; that the railroad watchman stationed at the crossing, whose duty it was to warn travelers of the approach of trains, did not on that night come out and give the usual signal; that the crossing itself was dangerous, the turnpike being on the descent of a hill, the left side of which coming south was covered with a thick growth of hedge, bushes and some trees, that the railroad as it approached the crossing comes out of a cut, making it difficult, if not impossible, to see a train at

any considerable distance from the turnpike, and that the train was moving at an unlawful rate of speed, running from Chester to Wilmington, a distance of 13.7 miles, in seventeen minutes, according to the trainmaster's report.

The defendant, on the other hand, produced evidence showing that the crossing was not unusually dangerous; that neither the undergrowth on the south side, nor the cut through which the railroad runs, materially obstructed the view of persons coming south, and using ordinary care; that the speed of the train was lawful, and that the watchman was diligent, and gave the usual signal. That the injuries complained of resulted from the negligence of Little, and not from the negligence of the Company.

At the trial a witness being produced by the plaintiff after having testified to his familiarity with the scene of the accident and its surroundings, was asked by *Hilles*, for the plaintiff, "Is that or not, in your judgment, an unusually dangerous crossing for a person coming in the pike, and meeting a south-bound train?"

*Bird*, for the defendant, objected; first, that it was irrelevant, and second that it was not a proper case for expert testimony or for a witness to give his opinion as to whether it was dangerous or not dangerous, after he has stated all the facts he knows to the jury. *Parvis vs. P. W. & B. Railroad Company*, 8 Houst, 436 ; *Graham et. al. vs. Pennsylvania Company*, 139 Pa. 149, 21 Atl. Rep. 151 ; *Koons vs. St. Louis, etc., R. R. Co.*, 65 Mo. 592; *Lawson's Adm's vs. St. Paul Railroad*, 21 A. & E., Ry. Cas. 249.

LORE, C. J.: We think the question is admissible. My recollection is that it was ruled in the case of *Parvis vs. P., W. & B. Railroad Company*. It is true that the law approves every physical fact that is capable of describing the surroundings definitely to the jury as a fact. But it is in many cases impossible for any one person to depict to the jury by his testimony, or by all the witnesses

the exact surroundings of that place showing all the elements of danger that enter into a crossing of that kind which is obtained by familiarity with the crossing itself and with the circumstances surrounding it. No one witness or number of witnesses will be able to present it fully. Therefore it does not come within the general rule of a witness taking a physical fact and stating that fact and surrounding facts from which any man might ordinarily infer the conditions of things.

The objection was overruled.

F. Harvey Day, being called by the plaintiff and questioned regarding the condition of the pike in 1893, was objected to by *Mr. Bird* on the ground that there had already been six witnesses examined upon that point by the defendant, though not called for that special purpose, and that was the limit allowed under the practice of the Court.

The Court ruled that six witnesses was all that would be allowed to be called to prove a separate fact, and if witness called for other purposes testify to that fact he will be considered one. Objection sustained.

Enoch Moore, a witness produced on the part of the defendant, after having testified that he had been somewhat familiar with the crossing in question for some years, and that he had within a few days of the trial inspected the same, and that there had been some change made in the surroundings in the way of certain trees being cut down, but that there was no material change on the pike at a distance of one hundred feet from the Railroad, was asked by *Mr. Bird* the following question : Did you on the last visit observe one of these fast trains coming from the north going towards the south ?

Objected to by counsel for plaintiff on the ground that the surroundings were not identical.

LORE, C. J.: We think this question is admissible. Mr. Hilles admits that you have proved by your witness that this obstruction ran down to one hundred feet. The defendant has a right

to show that it was not so, and he has produced testimony to the contrary, (and that is for the jury), by showing that the second two hundred feet is in the same condition as it was in 1893. Then the proof of the condition in 1893, being the same, we think it is admissible.

This was distinctly ruled in the case of *Parvis vs. P. W. & B. Railroad Company*, where the same matter came up. A hedge had been cut down along the railroad, but the Court permitted photographs taken at the time of the trial to be produced in evidence to show what the character of the place was, and whether it affected the question. I thought it was going very far, but it is a decision of this Court.

J. Jackson Pierce, after testifying that he had within a few days of the trial visited the scene of the accident and was familiar with it in the Spring of 1893, and that there had been no material change since that time in the surroundings that would obstruct the vision, was asked by Bird, for the defendant, what is the effect of a train coming at night, so far as seeing it is concerned.

*Hilles*, for the plaintiff, objected.

LORE, C. J.: We understood you to say that there was no change to obstruct the vision. We think it is admissible on that ground. You understand that the ruling of the Court is that there can be no testimony given as to examinations made upon that part of the ground where there had been any change.

*W. S. Hilles* and *Philip Q. Churchman*, for the plaintiff, asked for instructions, *inter alia*, as follows:

If the jury shall believe from the evidence that on the night of the accident the Concord crossing was attended with unusual danger to travelers on the public road, the defendant was guilty of negligence if it failed to use great care—care proportionate to the danger—in running its trains across the public road. It is for the jury to determine from the evidence whether the defendant was

guilty of negligence, and in this determination they must take into consideration the nature of the crossing to one driving as Little was driving that night, as to its dangerous character, obstructions in the way of vision, and all the other circumstances. Beach on Contributory Negligence § 191; Patterson, Railway Law § 170 and cases; *Patterson vs. R. R. Co.*, 4 Houston 103; *Parvis vs. R. R. Co.*, 8 Houston 436.

It is the province of the jury to determine whether the defendant was guilty of negligence in running its train across the Concord Pike that night at the rate of fifty-five or sixty miles an hour.

It was the duty of the defendant to give *timely* and *efficient* warning of the approach of the train to the Concord crossing that night. *Parvis vs. R. R. Co., supra*; *Continental Co. vs. Strad*, 95 U. S. 101.

If the jury shall believe that the defendant for many years had maintained a watchman at the Concord Crossing, whose duty it was to give *timely* and *efficient* warning to travellers on the highway of the approach of trains, and at the time of the accident the watchman failed to give Little such notice or warning, the defendant was guilty of negligence.

If the jury shall believe that Little was within the limits of the City of Wilmington at the time of the accident, he was entitled to the protection of the ordinance of the City of Wilmington, by which it is made unlawful for any locomotive railroad car or other vehicle to go at a faster rate than six miles per hour. City Ordinances (1893), pp. 33, 376. And the moving of a train at a more rapid rate was negligence *per se* on the part of the defendant. *Giles vs. Diamond State Iron Co.*, 7 Houst. 557; 2 Shear. & Redf. Negl. § 467.

The presumption of law is that Little did his duty in approaching the crossing that night, and negligence on his part causing or contributing to the accident must be proved directly or circumstantially—it may not be presumed.

Little was required to use such care, and only such care as a

reasonably prudent man under the circumstances of the case would exercise to preserve himself and property from injury.  *McCoy vs. R. R. Co.*, 5 Houst. 599 ; *Parvis vs. R. R. Co., supra* ; *Patterson vs. R. R. Co., supra.*

He was not bound to anticipate the negligence of the defendant or its servants.   Shearman & Redf. Negligence § 92.

While there is no general rule of law which requires that Railroad Companies shall station a flagman or watchman at every highway crossing, a jury may, however, determine whether a man ought to be stationed at a crossing where there is peculiar danger of accidents, as from a sharp curve, and the difficulty of seeing approaching trains where many pass.   Yet where a railroad is under no original obligation to station a flagman at a particular crossing, if it has done so for many years, travellers have a right to presume, in case of his absence, that the road is clear.

This is the rule in all or almost all of the United States, excepting Pennsylvania (see *R. R. vs. Franz*, 39 Am. & Eng. Ry. Cas. 628, criticised in note), and possibly Maryland, (see *M. C. R. R. vs. Neubeur*, 62 Md. 391.)

*Warner vs. N. Y. Central R. R. Co.*, 45 Barb. 299 ; *Ernst vs. Hudson River R. R. Co.*, 35 N. Y., 9 ; *Dolan vs. Delaware Canal Co.*, 71 N. Y. 285 ; *Glushing vs. Sharp*, 96 N. Y. 676 ; *St. Louis, V. & I. H. R. R. Co. vs. Dunn*, 78 Ill. 197 ; *R. R. vs. Clough*, (Ill.), 45 Am. & Eng. R. C. 137 ; *Burns vs. R. R.*, 65 Wis. 312 ; *State vs. R. R.*, 80 Mo. 430 ; *Pa. Co. vs. Stegmeier*, 118 Ind. 305 ; *R. R. vs. Schneider*, 35 Am. & Eng. Ry. Cas. 334 ; *Wilson vs. R. R.* (R. I.) 27 Atl. Rep. 258.   The United States Courts hold the same rule ; *Central Trust Co. vs. R. R.* 27 Fed. Rep. 159 ; *Wheelan vs. R. R.* 38 Fed. Rep. 15 ; and such is the rule in England ; *Stapeley vs. L. B. & S. Ry.*, L. R. 1 Ex. 21.   This rule has been approved by the text books ; Patterson R. R. Accident Law 170-173 ; Shearm. & Redf. Negl. §§ 91, 466, and note 2 ; Beach, Contrib. Neg. § 190.

If Little, through the negligence of the defendant, was placed in a situation where he had to adopt a perilous alternative, or

where, in the terror of the emergency for which he was not responsible, and for which the defendant was responsible, he acted wildly and negligently, and suffered in consequence, such negligent conduct, under these circumstances, is not contributory negligence. Beach, Contrib. Neg. §§ 40, 41.

*Levi C. Bird* and *Andrew E. Sanborn*, for the defendant.

LORE, C. J., (charging the jury.)

It is for you to determine whose negligence caused the damage.

To entitle the plaintiff to recover he must show to your satisfaction by a preponderance of proof, that the negligence of the defendant was the cause of the injuries; and that Little who was using the property of the plaintiff on that night did not contribute thereto. If the plaintiff has made such proof he is entitled to recover; for you are not to consider the care or negligence of Mr. Garrett and those with him in another carriage, only so far as the negligence of Little may be shown thereby. In this case we have to do only with the question of whether Little was negligent, not whether Garrett was negligent.

As Little is dead; not here to speak for himself; the law clothes him with the presumption that in approaching the crossing on that night he did his duty; used such care and precaution as an ordinarily prudent and careful man would use in like case. By that presumption you are to be governed, unless the evidence directly or indirectly rebuts it and shows that he did not use such care and precaution.

All railroad crossings of public highways at grade are dangerous. Some are unusually so, especially in crowded cities and where there are great natural or artificial obstructions. The laws requires a railroad corporation at such crossings, to use care and diligence for the protection of persons travelling on the highway proportioned in all cases to the dangerous character thereof. But a like duty is imposed by law upon the traveller on the highway;

Del.]  MARTIN vs. B. & P. R. R. Co.  131

Charge.

he must use like care and diligence. The same duty as to care rests upon the railroad company and upon the traveller on the highway. The rule is well stated by the late Chief Justice Comegys in *Parvis vs. P. W. & B. R. R. Co.*, 8 Houston, 436. "The greater the peril to the individual the greater the duty of care by the company, and of prudent and due caution on the part of the individual. At places of great danger great care must be taken by both parties."

As to flagmen, where a railroad is under no original obligation, to station a flagman at a particular crossing; yet if it has done so for many years, travellers have a right to presume in case of his absence that the road is clear and the way safe. Shear. & Redf. on Negligence § 466. Or as stated in *Berry vs. The Pennsylvania R. R. Co.*, 26 A. & E. R. R. Cas. 396, where a traveller, "knows that a flagman is habitually stationed at a crossing, and upon looking, finds that the flagman is not at his post giving signals of danger, he has a right to presume that a train is not about to pass."

If, therefore, the damage in this case was the result of such negligence on the part of the flagman at Concord crossing alone, the plaintiff will be entitled to recover; for it was the duty of the flagman to give timely and efficient warning. But the absence or the negligence of the flagman will not excuse the person about to cross the track from using every reasonable precaution that an ordinarily prudent and careful man would use. Notwithstanding the negligence of the flagman, if the traveller saw the danger or by the reasonable use of his sight and hearing could have seen or heard the approaching train, yet negligently crossed the tracks, and thereby contributed in any degree to the accident he cannot recover. If you believe Little so contributed to the accident on that night, the plaintiff in this case cannot recover.

In making up your verdict you must be governed by the evidence. Where the evidence is conflicting, as in this case, it is your duty to reconcile it if you can; if you cannot, then you should give credence to the testimony of those witnesses who are most entitled to belief; taking into consideration their intelli-

gence, opportunity for getting correct information, lack of bias, and lack of motive and interest to depart from the truth.

Should you find for the plaintiff, your verdict should be for $192.00, the actual damage proved by the plaintiff and not disputed by the defendant.

*The Jury disagreed.*